IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARETT L. GILBERTSON,

               Plaintiff,

    v.                                                 OPINION & ORDER

NANCY A. BERRYHILL,                           17-cv-631-jdp
Acting Commissioner of Social Security,

               Defendant.

---

Plaintiff Marett Gilbertson seeks judicial review of a final decision of Nancy A. Berryhill, Acting Commissioner of Social Security, finding her not disabled within the meaning of the Social Security Act. Gilbertson contends that the Administrative Law Judge (ALJ) erred by: (1) failing to give proper weight to certain medical opinions; (2) failing to make proper findings regarding certain specific limitations in determining her residual functional capacity (RFC); and (3) improperly assessing Gilbertson's subjective complaints regarding her symptoms.

The case is scheduled for an oral argument on June 26, 2018, but the court concludes that no oral argument is needed in light of the relatively straightforward nature of the claims. The court concludes that Gilbertson has failed to identify any reversible error and that the ALJ's decision applies the proper standards and is supported by substantial evidence. The court will deny Gilbertson's motion for summary judgment and affirm the Commissioner's decision.

BACKGROUND

Gilbertson applied for social security benefits on April 1, 2013. Her claim was denied both initially and upon reconsideration, so she filed a written request for a hearing, which was

held before ALJ John H. Pleuss on April 5, 2016. The ALJ determined that Gilbertson's date last insured (DLI) was June 30, 2013, and that she therefore had to "establish disability on or before that date to be entitled" to benefits. R. 15.[1]

The ALJ found that Gilbertson suffered from the following severe impairments: obesity, fibromyalgia, back impairment, peripheral artery disease, and arthritis. He determined that as of her DLI she had the RFC to perform sedentary work with the following additional restrictions: no crawling, kneeling, or climbing ladders, ropes, or scaffolds; no more than occasional stooping, bending, crouching, or climbing stairs or ramps; and no working at temperature or humidity extremes or around workplace hazards.

In determining Gilbertson's RFC, the ALJ gave great weight to the opinions of state agency physicians Margaret Fountain, M.D. and Mina Khorshidi, M.D. But the ALJ gave little weight to the opinion of treating nurse practionioner Sheryl Schulte, and very little weight to the opinion of treating physician Amy Muminovic, D.O. The ALJ also found that Gilbertson's testimony regarding her symptoms and limitations prior to her DLI was not fully consistent with the evidence of record.

Based on the testimony of a vocational expert (VE), the ALJ found that although Gilbertson could not return to her past cashiering work, her RFC would allow her to perform the jobs of an order clerk, assembler, and hand packer. He therefore found her not disabled prior to her DLI and denied her claim for benefits.

---

[1] Record cites are to the administrative transcript, located at Dkt. 9.

ANALYSIS

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts, weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Id.*

**A. Medical Opinions**

    **1. Sheryl Schulte**

Gilbertson contends that the ALJ improperly weighed the opinion of nurse practitioner Sheryl Schulte, because he did not consider proper regulatory factors or support his decision with substantial evidence. Schulte opined that Gilbertson needed to walk with a cane and had enough limitations on her ability to sit, stand, walk, and reach and manipulate objects to render her disabled. R. 682–87. The ALJ assigned this opinion little weight.

Under the regulations applicable to Gilbertson's claim, an ALJ cannot give controlling weight to Schulte's opinion because a nurse practitioner is not considered a treating source or an acceptable medical source. *See Schmitz v. Berryhill*, No. 16-cv-371, 2017 WL 605325, at *1 (W.D. Wis. Feb. 15, 2017); SSR 06-03p.[2] Still, the ALJ has a duty to explain his reasons for assigning a specific evidentiary weight to Schulte's opinion and to support his findings with substantial evidence in the record. *See Lareau v. Colvin*, No. 14-cv-611, 2015 WL 4509131, at

---

[2] SSR 06-03p has been rescinded but applies to all claims that were filed before March 27, 2017.

*6 (W.D. Wis. July 24, 2015). Among the factors that the ALJ may consider in assigning weight to an opinion are its supportability and consistency with the record as a whole. SSR 06-03p.

Here, the ALJ discounted Schulte's opinion because it was issued "well after" Gilbertson's DLI. R. 23. He determined that Schulte's opinion "significantly exceed[ed] any symptom-related limitations noted in [Schulte's] medical treatment notes" and that there was a "lack of overall consistency between the treating records and the opinions of Ms. Schulte." R. 24. He then pointed out multiple inconsistencies between Schulte's contemporaneous treatment notes and the level of restriction that she alleged in her opinion.

Gilbertson contends that the ALJ erred by improperly discounting the opinion because it was given after the DLI. A retrospective diagnosis may relate back to a covered period, but it must be supported by "contemporaneous corroborating evidence" to be entitled to any specific evidentiary weight. *See Pape v. Colvin*, No. 13-cv-236, 2014 WL 4186827, at *5 (W.D. Wis. Aug. 21, 2014). And here, the ALJ analyzed Schulte's contemporaneous treatment notes and found them to be inconsistent with the opinion that she gave in her retrospective diagnosis.

Gilbertson challenges the ALJ's conclusion that Schulte's treatment notes were inconsistent with her opinion, arguing that the treatment notes "do show that [she] experienced joint pain, lower extremity edema, and had lab tests indicative of inflammatory processes that correlate with cellulitis." Dkt. 11, at 10. However, the ALJ recognized that Schulte's notes mentioned Gilbertson's "back and ankle pain," R. 24, but went on to discuss multiple instances where Schulte's contemporaneous treatment notes reflected much less limitation than alleged in her later opinion.

Specifically, the ALJ cited Schulte's notes that stated Gilbertson had no musculoskeletal symptoms beyond her back and ankle pain, *see* R. 323, that she was in "no distress" and

4

generally "healthy," R. 390, that she had no "muscle aches, joint aches, joint swelling, or . . . acute back pain," R. 435, and that she had no pain in her calves or legs when walking. *See* R. 674. Gilbertson does not explain or rebut these examples, so she has not shown that the ALJ erred in his finding that Schulte's opinion is inconsistent with the treatment notes.

Gilbertson also argues that the ALJ should have also considered additional factors, specifically the length and nature of Schulte's treatment relationship with her. However, the ALJ need not explicitly discuss every factor. *See Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (affirming the denial of benefits even though the ALJ discussed only two regulatory factors). Although the ALJ did not explicitly mention the length or nature of Schulte's treatment relationship with Gilbertson, he thoroughly analyzed her treatment notes over the course of her treating relationship. Gilbertson does not explain how any of the other regulatory factors would alter or undermine the ALJ's analysis. The court concludes that the ALJ applied the proper analytical framework, even if he did not expressly recite his consideration of each factor.

### 2. Amy Muminovic

Gilbertson also contends that the ALJ erred by failing to assign controlling weight to the opinion of treating physician Amy Muminovic, D.O. Muminovic opined that Gilbertson was limited to "minimal" exertional activities and was therefore disabled. R. 688. The ALJ assigned this opinion "very little weight." R. 25.

Muminovic does not appear to have examined Gilbertson before October 2014, the same month she issued her opinion, and therefore primarily based her opinion on "the documentation that was sent to [Gilbertson] from her attorney and [reviewing] the forms that Sheryl Schulte NP completed." R. 622. A physician may be considered a nontreating source if

5

his or her evaluation of a claimant is "not based on [a] medical need for treatment or evaluation, but solely on [a] need to obtain a report in support of [a] claim for disability." *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). This principle might well apply to Muminovic's opinion, but the ALJ and the parties have treated Muminovic as a treating source, and so the court will as well.

Under the regulations applicable to Gilbertson's claim, "a treating source's opinion should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record." *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (citing 20 C.F.R. § 404.1527(c)(2)).[3] "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer good reasons for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010.) Here, the ALJ offered three good reasons for giving Muminovic's opinion little weight.

First, the ALJ discounted the opinion because he found it inconsistent with the record as a whole. Muminovic asserted that Gilbertson had a "well documented" history of chronic pain, R. 622, but the ALJ analyzed her treatment records from the relevant period and concluded they "actually reflect[ed] rather minimal complaints, if any at all, of musculoskeletal and neurological symptoms." R. 25. Gilbertson does not challenge this finding, and the record supports it. To cite just one more example, in addition to the low levels of pain reflected in Schulte's treatment notes discussed above, Gilbertson reported to Semi Ayub, M.D., in May 2012 that she felt "0/10 pain while sitting" and was in only "mild distress." R. 238.

---

[3] For claims filed after March 27, 2017, treating sources' opinions are not entitled to any specific evidentiary weight. *See* 20 C.F.R. § 404.1520c.

Second, the ALJ discounted the opinion because it cited to Schulte's "treatment records in support of [its] broad statement that [Gilbertson] is disabled." R. 25. As discussed above, the ALJ found Schulte's opinion that that Gilbertson was disabled to be inconsistent with her contemporaneous notes. As Muminovic did not address or explain the inconsistencies in Schulte's notes, the ALJ properly discounted Muminovic's opinion as being based on records that did not support a finding of disability.

Third, the opinion was given over a year after the DLI. The ALJ found that this meant that the opinion "pertain[ed]" to a time long after the DLI, which reflects that Muminovic did not have a lengthy or close relationship with Gilbertson. R. 25. Indeed, Muminovic's treatment notes from October 2014 indicate that Gilbertson "normally sees Sheryl Schulte." R. 622. Thus, the ALJ did not err by finding that Muminovic lacked the long-term familiarity with Gilbertson's condition that would have entitled her opinion to "more weight." *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014).

Gilbertson criticizes the ALJ's consideration of Muminovic's evaluation of Gilbertson's activities of daily living. Muminovic opined that Gilbertson "[c]an attend to more than 80% of her ADL; including bathing, dressing, cooking and simple cleaning tasks. Patient is able to shop, handle paperwork and feed self." R. 689. The ALJ thought this was inconsistent with Muminovic's assessment that Gilbertson suffered from "debilitating symptoms." R. 25. The ALJ could have explained this point more thoroughly. But the ALJ did not (as Gilbertson suggests, Dkt. 11, at 11) mistakenly equate the activities of daily living with the rigors of full-time work, an error that the Seventh Circuit has repeatedly condemned. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

In sum, the court concludes that the ALJ gave adequate reasons for discounting Muminovic's opinion.

## B. RFC deficiencies

Gilbertson also contends that the ALJ erred in assessing her RFC because the ALJ (1) failed to include a limitation on the need to elevate her legs throughout the day to treat her lymphedema; (2) failed to consider the effect that her obesity had on her other impairments; and (3) failed to include her need to use a cane when walking. The court will address each argument in turn.

First, the record does not support a finding that prior to her DLI Gilbertson had a need to elevate her legs to treat her lymphedema. Gilbertson points to the treatment notes of two doctors from April and May 2012 that recommended that she elevate her legs. But these recommendations were related to a cellulitis infection, a short-term condition that treatment records indicate was "resolving" by May 31, 2012. *See* R. 267–68, 279. The remainder of the evidence that Gilbertson points to are treatment notes from 2014, well after her DLI, for a leg ulcer. Thus, there is no support in the record for Gilbertson's claim that she had enduring impairments that required her to elevate her legs prior to her DLI.

Second, the ALJ did not fail to consider the effects of Gilbertson's obesity on her other impairments. Prior to his discussion of Gilbertson's RFC, the ALJ acknowledged that she was obese and stated that he would consider the effect her obesity had on her other impairments. *See* R. 17, 21. Then, in his RFC discussion, the ALJ explicitly acknowledged that "treating providers have repeatedly connected [Gilbertson's] symptoms with her obesity, noting the impact of excessive weight on her weight-bearing joints." R. 26. Even if the ALJ had not explicitly stated that he had considered Gilbertson's obesity, remand would not be appropriate.

An ALJ's failure to mention a claimant's obesity may be harmless error, provided that the ALJ adopts "the limitations suggested by the specialists and reviewing doctors who were aware of the condition." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). And a claimant must "specify how [her] obesity further impaired [her] ability to work." *Id.*

Here, the ALJ gave great weight to and adopted the limitations suggested by the state agency physicians, Fountain and Khorshidi, both of whom acknowledged that Gilbertson was obese, but determined that she could nevertheless perform sedentary work with appropriate limitations. R. 62, 80. Moreover, Gilbertson has not articulated how her obesity exacerbated any of her underlying conditions to the point they limited her functioning beyond the level found by Fountain and Khorshidi.

Third, as the Commissioner concedes, the ALJ erred by failing to incorporate the limitation set forth in Khorshidi's opinion that Gilbertson required the use of a cane. But Gilbertson has not shown that she was prejudiced by this failure, so remand is not appropriate.

At the hearing, the ALJ posed a hypothetical to William Dingess, a vocational expert (VE), that incorporated all of the limitations included the final RFC. *See* R. 53–54. The VE testified that such an individual would be able to perform the jobs of an order clerk, an assembler at the sedentary level, or a hand packer. Gilbertson's counsel then asked the VE how the additional restriction for the "use of a cane or a walker" would affect the availability of these "unskilled sedentary jobs." R. 56. The VE testified that "approximately 50 percent would be what I would estimate the reduction to be in jobs" for such a restriction. R. 57. A 50 percent reduction in the amount of jobs that the VE testified were available to Gilbertson in the state economy would leave 1,988 total jobs available to her. *See* R. 27; Dkt. 11, at 14.

9

Gilbertson does not argue that the VE's testimony was inaccurate or erroneous, but that a 50 percent reduction would equate to a "low enough [number] to raise the question of whether there actually would be sufficient jobs." Dkt. 11, at 14. However, the Seventh Circuit has stated that "it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). Thus, the ALJ did not err when he concluded that "even if the claimant required the use of an assistive device to walk, there nonetheless would be adequate numbers of jobs in the state and national economies for an individual with the claimant's [RFC] to perform." R. 27–28.

## C. Credibility determination

Gilbertson's final contention is that the ALJ did not properly credit her subjective symptoms of pain. Gilbertson does not identify any specific complaints that the ALJ failed to credit, but instead argues that the ALJ's entire analysis of her testimony regarding her subjective symptoms was flawed.

A district court must give "considerable deference" to an ALJ's credibility determination. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). The court "will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The court affords the ALJ's credibility determination deference because the ALJ is in the unique position to hear, see, and assess witnesses. *Id*. at 815. However, the credibility analysis must "be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Here, the ALJ first determined that the objective medical evidence did not corroborate Gilbertson's testimony regarding her subjective symptoms, based on numerous negative

imaging results—including from x-rays, MRIs, ultrasounds, and a Doppler study. Gilbertson does not dispute that these imaging results fail to show support her subjective complaints, but argues that "there is no requirement that subjective complaints of pain be entirely supported by objective evidence because pain is an inherently subjective experience." Dkt. 11, at 16. Gilbertson is correct on this point. But this was not the end of the ALJ's analysis.

Instead, the ALJ compared Gilbertson's hearing testimony to the earlier statements that she made in treatment notes, which he found did not support her testimony regarding her subjective symptoms. Specifically, the ALJ cited treatment notes from Semi Ayub, M.D. Ayub's notes indicate that throughout 2012 and 2013, Gilbertson's fibromyalgia was well-controlled, she had obtained months of pain relief from cortisone shots, her pain management was "OK," and she had only mild distress in her lower back, hips, and knees. R. 236–51. Furthermore, Gilbertson reported to Ayub that she felt "0/10 pain while sitting." R. 238. Gilbertson does not explain how the ALJ erred in determining that these contemporaneous treatment notes reflect a consistently low level of pain and discomfort that contradicts her testimony that she experienced "very painful" symptoms since 2012. R. 42. Thus, the court cannot say that the ALJ was patently wrong for not fully crediting her testimony.

Gilbertson also challenges the ALJ's reliance on Gilbertson's failure to comply with treatment recommendations to discredit her. The court agrees that the ALJ could have inquired about her reasons for failing to comply with treatment recommendations. But Gilbertson does not offer any alternative explanation, such as limited financial resources or lack of insurance, to explain any failure to follow recommended treatment. Standing alone, the ALJ's failure to specifically inquire about her failure to follow recommended treatment does not warrant remand.

One final point. Gilbertson also faults the testimony of the VE for not providing the DOT code for the jobs that he listed as available to Gilbertson. Gilbertson contends that this "prohibited" either her or the ALJ from determining whether there was a conflict between the VE's testimony and the DOT. Dkt. 11, at 15. But Gilbertson has not explained how she was prevented from looking up the named job in the DOT, and the VE stated that his testimony did not differ from any information in the DOT. R. 54. Even now, Gilbertson does not identify a conflict between the VE's testimony and the DOT, so the court sees no basis for remand.

ORDER

IT IS ORDERED that the decision of Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Marett L. Gilbertson's applications for disability insurance benefits is AFFIRMED and the plaintiff's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered June 26, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge